ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| IVELISSE ORTIZ LÓPEZ<br><br>Recurrida<br><br>v.<br><br>JAMALO AUTO CORP. H/N/C THE COLLECTION AUTO<br><br>Recurrida<br><br>**CARIBE FEDERAL CREDIT UNION**<br><br>Recurrente | KLRA202300561 | *Revisión Judicial* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: CAG-2021-0002822<br><br>Sobre: Compraventa de Vehículos de Motor |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 15 de marzo de 2024.

Comparece Caribe Federal Credit Union (en adelante, parte recurrente y/o CFCU) mediante un recurso de *Revisión Judicial,* para solicitarnos la revisión de la *Resolución* emitida y notificada el 30 de agosto de 2023, por el Departamento de Asuntos del Consumidor (en adelante, DACo).[1] Mediante la *Resolución* recurrida, el DACo declaró Con Lugar la *Querella* instada por la señora Ivelisse Ortiz López (en adelante, recurrida y/o señora Ortiz López).

Por los fundamentos que expondremos, se *modifica* la *Resolución* recurrida y así modificada, se *confirma.*

### I

Los hechos en este caso iniciaron cuando el 14 de octubre de 2021, la señora Ortiz López presentó una *Querella* ante el DACo.[2] En dicha *Querella,* en síntesis, expresó haber adquirido el 21 de julio

---

[1] Apéndice de la parte recurrente, a las págs. 156-169.
[2] *Id.,* a las págs. 7-22.

Número Identificador

SEN2023_____

de 2021 un vehículo de motor usado marca Hyundai Santa Fe del año 2017 por la cantidad de $24,995.00 dólares más $3,169.37 dólares por cargos de financiamiento, en Jamalo Auto Corp., quien hace negocios como The Collection Auto (en adelante, el Vendedor y/o Jamalo) y que, la compra del vehículo fue financiada por la parte recurrente, mediante un Contrato de Venta al Por Menor a Plazos.[3] La señora Ortiz López esbozó que aceptó comprar el vehículo bajo el entendimiento de que este era nuevo a los efectos de las piezas y que no había sufrido corrosión, daños, desgastes y/o reparaciones. El Vendedor le ofreció una garantía de tres (3) meses a partir de la compra del vehículo, pero alegó que no se le entregó ningún documento al respecto.

Explicó que, el 12 de agosto de 2021, la unidad comenzó a confrontar problemas. Luego de varios incidentes, al llevarlo a inspeccionar a el taller de mecánica Caguas Tire, le informaron que el vehículo se encontraba corroído, y que los *pads* y los discos se encontraban en mal estado. Así, las cosas, la señora Ortiz López le informó a Jamalo que no deseaba retener posesión del vehículo por el mal estado en que se encontraba. Hasta ese momento, la señora Ortiz López indicó haber emitidos dos (2) pagos de $395.1 dólares a favor de CFCU.

En la *Querella,* solicitó que se declarara nula la compraventa del vehículo y, en consecuencia, se declarara nulo el Contrato de Compraventa al Por Menor a Plazos entre CFCU y esta, así como solicitó la imposición de una cuantía de $6,500.00 dólares por concepto de daños y perjuicios, más gastos y honorarios de abogado por una suma de $1,500.00 dólares.[4] Además, le solicitó a Jamalo la devolución de cualquier cantidad pagada por la recurrida con los intereses legales hasta que dicha suma fuese satisfecha. De igual

---

[3] *Id.,* a las págs. 31-33.
[4] *Id.,* a la pág. 21.

forma, solicitó a CFCU la devolución de cualquier cantidad pagada. El 15 de octubre de 2021, el DACo emitió *la Notificación de la Querella* CAG-2021-0002822 sobre compraventa de vehículo de motor.[5]

En respuesta, el 27 de diciembre de 2021, CFCU presentó una *Contestación a la Querella.*[6] Alegaron que desconocían como se realizó el proceso de compra del vehículo en cuestión y que desconocían los desperfectos de este. Añadieron que no intervinieron al momento de la negociación ni de la compra del vehículo. Entre sus defensas afirmativas expresaron que, cualquier responsabilidad u obligación, si alguna, de compensar a la señora Ortiz López, le correspondía al Vendedor. En su contestación, incluyó una reclamación contra coparte contra el Vendedor.

Por su parte, el 18 de enero de 2022, el Vendedor presentó su *Contestación a la Querella.*[7] Alegaron que estaban en disposición de cumplir con los acuerdos verbales previamente llegados con la señora Ortiz López, entiéndase: (i) reemplazar las piezas y prestarle una unidad en lo que se repara el vehículo en cuestión; o, (ii) cambiar la unidad.

Tras varios incidentes procesales, innecesarios pormenorizar, el 3 de agosto de 2022, se celebró la primera vista administrativa.[8] Luego de varias transferencias, finalmente, la próxima vista administrativa se celebró los días 28 de marzo de 2023 y 9 de mayo de 2023.[9] Producto de la vista celebrada, DACo emitió y notificó una *Resolución* el 30 de agosto de 2023.[10] De la *Resolución* se desprenden diecinueve (19) determinaciones de hechos,[11] así como las

---

[5] *Id.,* a las págs. 1-6.
[6] *Id.,* a las págs. 35-42.
[7] *Id.,* a las págs. 43-45.
[8] *Id.,* a las págs. 60-64.
[9] *Id.,* a las págs.156-169.
[10] *Id.,* a las págs. 156-169.
[11] *Id.,* a las págs. 156-160.

correspondientes conclusiones de derecho,[12] las cuales transcribimos *in extenso*:

1. El 14 de julio de 2021[,] la Querellante junto a su esposo, visitó las facilidades de Jamalo con el propósito de adquirir un vehículo.

2. La Querellante fue atendida por un vendedor de apellido Santos (en lo sucesivo[,] el Vendedor). A la Querellante le interesó un vehículo de motor usado de la marca Hyundai, Modelo Santa Fe del año 2017. (en lo sucesivo[,] el Vehículo).

3. La Querellante hizo una prueba de carretera del Vehículo y posteriormente procedió a inspeccionar el interior del Vehículo, levantó el bonete del Vehículo para ver su motor, se revisaron los espacios interiores de los pasajeros y la parte del baúl. Se revisó el edómetro del Vehículo el cual marcaba la cantidad de 41,707 millas. El precio pactado entre la Querellante y Jamalo fue la cantidad de $24,995.00.

4. El 16 de julio de 2021, la Querellante fue a la Cooperativa de Seguros Múltiples y pagó la cantidad de $960.00 para asegurar el Vehículo y posteriormente pasó a buscar el Vehículo a las facilidades de Jamalo.

5. El 21 de julio de 2021, la Querellante suscribió un contrato de compraventa del Vehículo con Jamalo. En la guantera del Vehículo estaba el Reglamento de DACO, Manual de Garantía del Fabricante, Manuales de Servicio de la Unidad. Sin embargo, el Vendedor no le entregó a la Querellante el Certificado de Garantía del Vehículo Usado.

6. Luego de varios trámites[,] la solicitud de préstamo para la compra del Vehículo fue sometida y aprobada por Caribe Federal Credit Union.

7. El 14 de agosto de 2021, la Querellante llevó el Vehículo a las facilidades de Jamalo para que verificaran unos ruidos en la parte frontal del Vehículo. La Querellante fue atendida por el Vendedor, quien le dijo a la Querellante que haría una prueba de carretera corta al Vehículo, ya que era el único empleado que se encontraba en Jamalo. Luego de realizada la prueba de carretera, el Vendedor le indicó a la Querellante, que eso podían ser los pads sucios que cuando lavara el Vehículo se le iba el ruido. El Vendedor no le entregó a la Querellante una hoja de servicio que registrara el motivo de su visita a Jamalo ni el servicio prestado.

8. Luego de la Querellante utilizar el Vehículo por un tiempo, el ruido se agudizó y la Querellante se comunicó con la Presidenta, quien le informó que coordinaría una cita con su mecánico para que evaluara el Vehículo el 31 de agosto de 2021. El 30 de agosto de 2021, la

---

[12] *Id.,* a las págs. 160-164.

Presidenta llamó a la Querellante para cancelar la cita porque el mecánico no estaba disponible.

9. El 1 de septiembre de 2021[,] la Querellante dejó el Vehículo en Caguas Tire para que revisaran el origen del ruido. Un Técnico cuyo nombre, la Querellante no recuerda la llamó y le indicó que eran los pads y discos del Vehículo y el costo del reemplazo ascendía a la cantidad de $560.00. La Querellante no autorizó realizar el trabajo. Una amiga en común de la Querellante y la Presidenta de nombre Ivette, pasó a recoger el Vehículo de la Querellante a Caguas Tire, en donde uno de los Técnicos de Caguas Tire le informó que el Vehículo tenía corrosión por la parte de abajo. La Sra. Ivette tomó unas fotos con su celular y video de la parte de abajo del Vehículo y se los envió a la Presidenta y a la Querellante.

10. Cerca de las 7:00 p.m. del 1 de septiembre de 2021, la Presidenta, llamó a la Querellante y le indicó que había consultado con un mecánico las fotos y videos que le enviaron y que entendía que las piezas eran reemplazables y le informó que estaba en la disposición de reemplazar las piezas y brindarle un vehículo sustituto.

11. El 2 de septiembre de 2021, la Presidenta llamó a la Querellante para que pasara el día 4 de septiembre de 2021, por las facilidades de Jamalo. La Querellante asistió ese día acompañada de su esposo y sin el Vehículo. La Querellante le informó a la Presidenta que no deseaba el Vehículo, y si se podía cambiar por otra unidad, la Presidenta le ofreció otro vehículo el cual tenía un impacto. La Querellante no aceptó el vehículo, que le ofreció la Presidenta.

12. El 14 de octubre de 2021, el Lcdo. Christian López Ríos, en representación de la Querellante, radicó ante este Departamento la Querella de epígrafe, en síntesis, solicitó la Nulidad del Contrato de compraventa indicando que hubo vicios en el consentimiento indicando que nunca el Vendedor le informó a la Querellante que el Vehículo había tenido uso irregular, daños o desgaste anteriores a la compra efectuada por la Querellante.

13. Como parte del proceso administrativo, el Departamento[,] el 4 de mayo de 2022[,] hizo una inspección del Vehículo de la Querellante. El 15 de junio de 2022 se notificó el Informe de Inspección del Técnico de Investigación de DACO, Carlos A. Molini Santos (en los [sic] sucesivo[,] el Técnico Molini) a las partes del caso de epígrafe.

14. En su informe el Técnico de Investigación Molini Santos en la parte titulada: Resultados de la Investigación, indicó lo siguiente.

**RESULTADOS DE LA INSPECCIÓN**

**Hallazgos de la inspección según alegaciones de la querella:**

En prueba de carretera se percibe un sonido de la parte delantera al aplicar el pedal del sistema de frenos, este sonido es provocado por los pads de frenos delanteros gastados. Se levantó la unidad en el pino. Se observó que todas las piezas que presentan soldadura; la soldadura: presenta oxidación. Se observó que la tornillería por debajo; presenta oxidación. Se observó que la conexión delantera y la conexión trasera del sistema de escape; están corroídas. El Perito del Querellado, aflojó y removió los tornillos de [l]os 4 calipers del sistema de frenos. La carrocería por debajo; presenta oxidación. Las partes del tren delantero y del tren trasero; presentan oxidación. El cardan y las y las uniones presentan oxidación. El aro de repuesto; presenta oxidación. Los discos y los calipers de sistema de frenos; presentan oxidación. La Querellante se lleva la unidad en grúa. La Querellante solicita la cancelación del contrato. La Querellante indica que se ampara en el Reglamento de DACO. No hubo acuerdo.

**Prueba de carretera: Sí**

| Millaje antes de inspección 43,212 | Millaje luego de inspección 43,215 | |
|---|---|---|

15. La Opinión Pericial, Estimado y Observaciones[,] el Técnico Molini indicó lo siguiente:

**OPINIÓN PERICIAL**

Para poder utilizar la unidad, hay que reemplazar los *pads* de frenos delanteros. Para remover y prevenir la oxidación de las partes de debajo de la unidad, hay que aplicar *sand blasting*, lavar todo, aplicar tratamiento anticorrosivo y pintar.

**ESTIMADO**

| PIEZAS | | COSTO |
|---|---|---|
| Reemplazo de pads delanteros | | $150.00 |
| Aplicar *sands blasting*, lavar, aplicar tratamiento anticorrosivo y pintar | | $2,800.00 |
| Reemplazar conectores tubería de escape | | $195.00 |

**OBSERVACIONES**

En prueba de carretera la unidad trabajó satisfactoriamente; excepto por el sonido al aplicar los frenos.

16. La Querellante contrató los servicios como perito del Sr. José R. Nieves (en los [sic] sucesivo[,] Sr. Nieves) para que hiciera una evaluación del Vehículo. El 31 de mayo de 2022, el Sr. Nieves realizó una evaluación visual del Vehículo durante 20 a 30 minutos. El Informe del Sr. Nieves fue radicado en el Departamento el 26 de julio de 2022.

17. Como parte de los documentos sometidos con su Informe, el Sr. Nieves, sometió un informe de CARFAX relacionado al Vehículo de la Querellante, el cual indica que el Vehículo que Jamalo le vendió a la Querellante, el 16 de septiembre de 2016 fue identificado o registrado como un Vehículo de alquiler. El 25 de mayo de 2017 fue vendido a una *Fleet/Lease Company*. Esa información no le fue informada a la Querellante al momento de comprar el Vehículo.

18. Jamalo contrató los servicios como perito del Sr. Salvador López Cardec (en lo sucesivo[,] el Sr. López). El 18 de agosto de 2022, el Sr. López hizo una inspección del Vehículo y evaluación pericial luego que fuera autorizado por este Departamento. En aquella ocasión[,] el Sr. López reemplazó los pads del Vehículo y demostró que las piezas oxidadas podían ser limpiadas y reemplazadas.

19. Luego de la evaluación del Informe Pericial del Sr. López, su testimonio y video presentado en la vista administrativa y el Informe del Técnico Molini[,] el Departamento concluye que el Vehículo no es pérdida total, que las partes oxidadas podían ser limpiada[s] y muy pocas reemplazadas. Pero dicho trabajo era necesario para evitar que las partes sufrieran corrosión y perforaciones, y que no era un asunto puramente cosmético. Por tal razón, el Vendedor venía obligado a informarle la condición en que se encontraba el Vehículo por debajo a la Querellante.

Producto de lo anterior, el DACo declaró Ha Lugar la *Querella* instada por la señora Ortiz López.[13] En consecuencia, (i) decretó la nulidad del contrato de compraventa del vehículo; (ii) ordenó a CFCU a presentar, en el término de cinco (5) días, los cálculos de lo pagado por la señora Ortiz López en cuanto a principal e intereses y el balance de cancelación conforme al contrato de préstamo; (iii) ordenó a CFCU a cesar cualquier gestión de cobro contra la señora Ortiz López, por mensualidades vencidas en cuanto al contrato de compraventa del vehículo en cuestión, cuya nulidad se ordenó; (iv) ordenó, de forma solidaria al Vendedor y a CFCU a que en el término

---

13 *Id.,* a la pág. 165.

de treinta (30) días devolviera a la señora Ortiz López todas las mensualidades, principal e intereses pagados por esta conforme al contrato, más los intereses en caso de incumplimiento; y, (v) dispuso que tanto el Vendedor como CFCU eran solidariamente responsables frente a la señora Ortiz López por la devolución de todo el dinero pagado por esta conforme al contrato. Por último, determinó que una vez se devolviera el dinero, la señora Ortiz López debía devolver el vehículo al Vendedor y/o a CFCU.

En la *Resolución* recurrida, el DACo concluyó que las actuaciones del Vendedor constituían una violación a los principios de buena fe que debían permear en todo negocio jurídico y denotaron un grave menosprecio por los derechos de los consumidores. Específicamente, dispuso que el Vendedor incumplió con las Reglas 27.1 y 30.1 del Reglamento de Garantías de Vehículos de Motor Núm. 7159 del 6 de junio de 2006.[14] Concluyó, además, que, en este caso, si la señora Ortiz López hubiese conocido las condiciones de oxidación que presentaba la parte inferior del vehículo, no lo hubiese adquirido. A tenor, dispuso que procedía la resolución del contrato porque el defecto del vehículo recayó en un aspecto determinante de la adquisición puesto a que, si la señora Ortiz López hubiese conocido que el vehículo era uno de alquiler, no lo hubiese adquirido. De igual forma, el DACo juzgó que había mediado dolo grave en la contratación, por lo que procedía que se decretara la nulidad de la orden de compra del vehículo en cuestión.

Inconformes con lo allí resuelto, el 19 de septiembre de 2023, tanto CFCU como el Vendedor presentaron solicitudes de reconsideración.[15] En respuesta, mediante *Resolución* emitida el 26 de septiembre de 2023, el DACo declaró ambas solicitudes de

---

[14] Reglamento de Garantías de Vehículos de Motor, Núm. 7159, 6 de junio de 2006.
[15] *Id.,* a las págs. 170-191.

reconsideración No Ha Lugar.[16] Dicha *Resolución* fue notificada el 27 de septiembre de 2023.[17]

Habiendo quedado insatisfecho la parte recurrente, el 27 de octubre de 2023, presentó un recurso de *Revisión Judicial* mediante el cual esgrimió la comisión de dos (2) errores, a saber:

    a. Erró el Departamento de Asuntos del Consumidor (DACo) al imponerle responsabilidad solidaria al acreedor financiero Caribe Federal Credit Union, por las acciones y/u omisiones del vendedor del vehículo de motor Jamalo Auto.

    b. Err[ó] el Departamento de Asuntos del Consumidor (DACo) al imponer responsabilidad solidaria entre las coquerelladas, sin haberse pactado. La solidaridad no se presume.

Mediante *Resolución* emitida el 31 de octubre de 2023, este Tribunal concedió término a la parte recurrente para acreditar haber notificado copia del recurso a las partes y la agencia recurrida. Además, ordenó al DACo a presentar copia certificada del expediente administrativo, Querella Núm.: CAG-2021-0002822. El 2 de noviembre de 2023, la parte recurrente presentó un escrito mediante el cual acreditó la notificación a las partes y a la agencia recurrida. Por su parte, el 7 de noviembre de 2023, el DACo presentó un escrito al cual le acompañó la copia certificada del expediente administrativo, según ordenado.

De ahí, y tras juzgar este Tribunal que la *Resolución* en reconsideración se emitió y notificó por el Servicio Postal el 26 de septiembre de 2023, razonamos que habiéndose presentado el recurso el 27 de octubre de 2023, se hizo de manera tardía. Por lo anterior, el 4 de diciembre de 2023, esta Curia emitió una *Sentencia* mediante la cual se desestimó el recurso por tardío. Inconforme con lo resuelto, la parte recurrente, de forma oportuna presentó una *Reconsideración.* En ella, plantearon, en síntesis, que,

---

[16] *Id.,* a la pág. 194.

[17] *Id.,* a las págs. 192-193 y 195. Véase, además, Reconsideración presentada ante esta Curia por la parte recurrente, así como la *Moción en Cumplimiento de Orden,* presentada ante esta Curia por el DACo.

independientemente de la fecha del matasellos, la notificación fue realizada por el DACo al día siguiente, entiéndase, el 27 de septiembre de 2023. Por su parte, el DACo presentó su posición en torno a la misma, y en ella, se allanó a lo solicitado, tras razonar que el recurso fue presentado en término. En respuesta, mediante *Resolución* emitida el 24 de enero de 2024, este Tribunal declaró *Ha Lugar* la reconsideración y concedió término a la parte recurrida para presentar el correspondiente alegato en oposición. Habiendo decursado el término concedido a la parte recurrida sin haber cumplido con lo ordenado, procederemos a disponer del recurso sin el beneficio de su comparecencia.

**II**

### A. Revisión Administrativa

El Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo) ha sostenido que, el derecho a cuestionar la determinación de una agencia mediante revisión judicial es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[18] El artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[19] otorga la competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[20] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme la ley y de forma razonable.[21] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados y si son compatibles con la política pública

---

[18] *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).
[19] Ley Núm. 201-2003 (4 LPRA sec. 24y(c)).
[20] *Asoc. Condómines v. Meadows Dev., supra.*
[21] *Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011); *Empresas Ferré v. ARPe*, 172 DPR 254, 264 (2007).

que las origina.[22] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y, (iii) la revisión completa de las conclusiones de derecho.[23]

El Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[24]

Dentro de este marco, nuestro Tribunal Supremo ha reiterado que los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[25] Por un lado, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no alterarán las determinaciones de hechos de las agencias, siempre que surja del expediente administrativo evidencia sustancial que las sustente.[26] Igualmente, las determinaciones de los entes administrativos tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas.[27] A la luz de esto, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[28] Ahora bien, esta

---

[22] *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018).

[23] *Batista, Nobre v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA*, 149 DPR 263, 279-280 (1999).

[24] *Asoc. Vec. Altamesa Este v. Municipio de San Juan*, 140 DPR 24 (1996).

[25] *Rolón Martínez v. Caldero López, supra*; *Asoc. Fcias. v. Caribe Specialty et al. II., supra*.

[26] *Rolón Martínez v. Caldero López, Id*; *Asoc. Fcias. v. Caribe Specialty et al. II., Id*.

[27] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

[28] *Id.*

deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[29]

El Tribunal Supremo ha establecido que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el Tribunal, si se basan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad.[30] La evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[31] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[32] Ello implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[33] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos y no los tribunales.[34]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[35] Para ello, deberá demostrar que

---

[29] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. ARPe, supra.*

[30] *Batista, Nobre v. Jta. Directores, supra,* 216, citando a *Pereira Suárez v. Jta. Dir. Cond.,* 182 DPR 485, 511-512 (2011); *Domínguez v. Caguas Expressway Motors,* 148 DPR 387, 397-398 (1999).

[31] *Id. Otero v. Toyota,* 163 DPR 716, 728 (2005).

[32] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 437 (1997).

[33] *Hilton v. Junta de Salario Mínimo,* 74 DPR 670, 687 (1953).

[34] *OCS v. Triple-S,* 191 DPR 536, 554 (2014); Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme,* 3ra ed., Colombia, Ed. Forum, 2013.

[35] *Pacheco v. Estancias,* 160 DPR 409, 431 (2003).

existe otra prueba en el expediente, que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[36] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho y no sustituirá el criterio de la agencia por el suyo.[37] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[38] De esta manera, los tribunales, al realizar su función revisora, están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra.[39] Así pues, si el punto de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable sin limitación.[40]

Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente.[41] Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de intervenir.[42]

---

[36] *Gutiérrez Vázquez v. Hernández*, 172 DPR 232, 245 (2007).
[37] *Otero v. Toyota, supra.*
[38] *García Reyes v. Cruz Auto corp., supra,* 894.
[39] *Asoc. Vec. de H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).
[40] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).
[41] *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007); *López Borges v. Adm. Corrección,* 185 DPR 603, 626 (2012).
[42] *Cruz v. Administración,* 164 DPR 341, 357 (2005).

### B. La Solidaridad en las Obligaciones

El Código Civil de Puerto Rico de 2020 reconoce que, "[e]n virtud de lo dispuesto expresamente en la obligación o en la ley puede exigirse a cada uno de los deudores, o por cada uno de los acreedores, el total de la prestación".[43] Esto es lo que se conoce como una obligación solidaria.

Sobre este tema, el Alto Foro se ha expresado en torno a que las obligaciones pueden ser clasificadas de acuerdo a los sujetos que componen la relación; a causa de ello, existen obligaciones mancomunadas y solidarias.[44] En las obligaciones mancomunadas, la deuda puede ser dividida, y cada deudor cumplir con su parte de forma independiente; mientras que, en las obligaciones solidarias, cada acreedor tiene derecho a pedir y cada deudor tiene el deber de realizar íntegramente la prestación debida.[45] Por otro lado, la solidaridad no se presume, conforme lo interpreta nuestra jurisprudencia, la mancomunidad es la regla y la solidaridad es la excepción, surgiendo esta última sólo cuando la obligación expresamente lo determine.[46] Cada uno de los acreedores solidarios puede hacer lo que sea útil a los demás, pero no lo que les sea perjudicial; las acciones ejercitadas contra cualesquiera de los deudores solidarios perjudicaran a estos.[47]

Finalmente, nuestro Tribunal Supremo ha dispuesto que para que exista solidaridad contractual, ésta (i) se debió haber pactado expresamente, o; (ii) debe surgir claramente del contenido del contrato en cuestión, que la relación entre las partes se constituyó con carácter solidario.[48] La solidaridad es una excepción en el régimen de las obligaciones contractuales; cuya obligación no puede

---

[43] 31 LPRA § 9055, Art. 1096.
[44] *Fraguada Bonillla v. Auxilio Mutuo,* 186 DPR 365, 375 (2012).
[45] *Id., citando a* J. Castán Tobeñas, *Derecho Civil Español*, 10ma ed., Madrid, Ed. Reus, 1967, T. III, pág. 107.
[46] *Fraguada Bonillla v. Auxilio Mutuo, supra.*
[47] 31 LPRA § 9058, Art. 1099.
[48] *General Accd. Ins. Co. PR v. Ramos*, 148 DPR 523, 537 (1999).

ser considerada solidaria, salvo que emane de manera evidente del contrato.[49]

### III

Tenemos ante nuestra consideración un recurso de *Revisión Judicial* mediante el cual CFCU, quien es la entidad que financió el vehículo adquirido por la señora Ortiz López del concesionario Jamalo, nos ha esgrimido la comisión de dos (2) errores por los cuales juzga, la *Resolución* recurrida debe ser revocada o, en su defecto, modificada para eximirles de responsabilidad. En sus dos (2) señalamientos de error, sostiene que el DACo incidió tras imponerle responsabilidad solidaria a estos como acreedores financieros, aduciendo que la misma no fue pactada con el Vendedor y que incidió al imponerle la referida responsabilidad, por las acciones y/u omisiones de Jamalo.

En lo que respecta a la controversia ante nos, en su *Resolución* el DACo: (i) ordenó, de forma solidaria, al Vendedor y a CFCU a que en el término de treinta (30) días devolviera a la señora Ortiz López todas las mensualidades, principal e intereses pagados por esta conforme al contrato, más los intereses en caso de incumplimiento y (ii) dispuso que tanto el Vendedor como CFCU eran solidariamente responsables frente a la señora Ortiz López por la devolución de todo el dinero pagado por esta conforme al contrato.

Nótese que, en sus determinaciones de hechos, conclusiones de derecho y en su aplicación, el DACo **no** señaló ningún incumplimiento de disposición legal alguna por parte de CFCU. Sin embargo, cuando emitió su *Orden* le impuso responsabilidad solidaria junto a Jamalo. Precisa delimitar que la controversia es una sola y se refiere a si el DACo incidió al imponerle responsabilidad solidaria al Vendedor del vehículo objeto de este

---

[49] *Id.*

caso y al acreedor financiero, en ausencia de que dicha responsabilidad se hubiese pactado. Por tanto, razonamos que el asunto es uno de estricto derecho.

Ahora bien, nuestro ordenamiento jurídico exige que esta Curia, a la hora de ejercer su función revisora, conceda gran deferencia a las determinaciones realizadas por el foro administrativo ya que están revestidas de una presunción de legalidad y corrección.[50] No obstante, este Tribunal podrá intervenir en aquellas instancias en la cual la agencia haya aplicado de manera errónea el derecho.[51] Tal es el caso en la controversia ante nos.

Según se desprende del expediente, como producto de la vista celebrada, el DACo imputó responsabilidad al Vendedor, no así a CFCU. Tras una lectura y análisis integral de la *Resolución* recurrida, no encontramos ningún indicio o prueba del cual se desprenda algún acuerdo que disponga la solidaridad de la obligación a la parte recurrente en este caso. Esto tampoco surge de las determinaciones de hechos ni de ningún otro documento que obra en el expediente administrativo. Es preciso recalcar que ha sido norma firmemente reiterada que en nuestro ordenamiento jurídico la solidaridad no se presume.[52] Este tipo de obligación únicamente se concretiza cuando así se haya pactado entre las partes o si alguna ley lo ordenase.[53]

Luego de un detenido análisis de la totalidad del expediente ante nuestra consideración y del expediente administrativo, a la luz del derecho aplicable, disponemos que los errores esgrimidos fueron cometidos, por lo que procede *modificar* la *Resolución* recurrida y así modificada se *confirma* la misma. En consecuencia, resolvemos que CFCU no es responsable de forma solidaria por las acciones u

---

[50] *Rolón Martínez v. Caldero López, supra.*
[51] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012).
[52] *Presidential v. Transcaribe,* 186 DPR 263, 287 (2012).
[53] *Id.*

omisiones del Vendedor, por lo que se le exime de esta responsabilidad.

**IV**

Por los fundamentos que anteceden, se *modifica* la *Resolución* recurrida y así modificada, se *confirma.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones